UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JEFFREY N. HOPKINS, | |
| | Civil No. 19-cv-1924 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CHRISTINE WORMUTH, Secretary, Department of the Army[1], | |
| Defendants. | |

Jeffrey N. Hopkins, 1019 Aspen Valley Drive, Onalaska, Wisconsin, 54650, *pro se* plaintiff.

Adam J. Hoskins, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, for defendant.

Plaintiff Jeffrey Hopkins alleges that his employer, the U.S. Army Corps of Engineers ("USACE") discriminated against him on the basis of age when they failed to promote him and instead selected a candidate two years younger. Hopkins has presented no evidence that USACE's legitimate nondiscriminatory reasons for not selecting Hopkins were pretextual or that the real reason for USACE's decision was age discrimination. Furthermore, the other candidate who was ultimately selected for the position and

---

[1] Christine Wormuth, Secretary of the Army, has been substituted in as the proper Defendant under Federal Rule of Civil Procedure 25(d).

1

Hopkins were similarly qualified. Thus, the Court will grant Defendant's Motion for Summary Judgment.

## BACKGROUND

### I. FACTUAL BACKGROUND

Hopkins has been an employee of the USACE for over eighteen years. (Decl. of Adam Hoskins ("Hoskins Decl."), Ex. B at 12:7, May 7, 2021, Docket No. 57.) In 2015, Hopkins was working as First Mate of the Dredge Goetz vessel fleet with the USACE St. Paul District. (*Id.* at 15:7–13.) As part of his duties as First Mate Hopkins supervised several crew members and would step into the role of Master PLD whenever needed. (Plf. Memo. in Opp. to Def's. Mot. for Summ. J. at 6, June 4, 2021, Docket No. 65.) The Dredge Goetz fleet's regional dredging mission is to maintain the navigation channel on the Mississippi River between St. Paul, Minnesota and St. Louis, Missouri, as well as the Illinois Waterway and other regional customers. (Hoskins Decl., Ex. A at 99.)

In February 2015, USACE's St. Paul District announced an opening for the position of Master PLD Class 1, and the selected applicant would serve as the Master of the Dredge Goetz vessel fleet. (*Id.* at 99–105; Ex. B at 24:11–13.) The application period was open from February 6, 2015 to February 19, 2015. (*Id.* at 99.) Duties of the Master PLD position include being "[r]esponsible for the performance of maintenance dredging work assigned to the Dredge Goetz," directly supervising "the activities of a crew of approximately 53 employees," and planning "for the development in his crews of reserve abilities, group

spirit and job satisfaction." (*Id.* at 101.) The job posting listed screen out elements including experience with dredging knowledge, leadership, organization, and safety. (*Id.*)

When the job posting first appeared online, it included a requirement that all applicants possess two mariner credentials: (1) U.S. Coast Guard Master of Towing Vessels (Western Rivers); and (2) Master of Steam & Motor Vessels (1600 GRT on Inland Waterways). (Decl. of Christopher Atkins ("Atkins Decl.") at 2, 18, May 7, 2021, Docket No. 59.) The second credential requirement was changed on February 9, 2015 to state "Master of Steam & Motor Vessels (1600 GRT – **Western Rivers**)." (Hoskin Decl., Ex. A at 100.) According to the individual who made the change, it was done because a certification for Inland Waterways is unnecessary for the Master PLD position. (Atkins Decl. ¶ 7.) Since Inland Waterways include waters shoreward of designated boundary lines along the coasts but does not include waterways where the Dredge Goetz mainly operates, such as the Mississippi River, such a certification is not required. (Atkins Decl. ¶ 7.)

Hopkins submitted his application for the position of Master PLD on February 19, 2015; at this time, he was 39 years, 11 months and 23 days old. (Hoskins Decl., Ex. A at 113–30, 235.) Hopkins and two other candidates, including the ultimate selectee Brian Krause, were invited to interview with the selection panel. (*Id.* at 110.) The selection panel consisted of Bryan Peterson, Kevin Baumgard, Chris Atkins, Steve Tapp, and Scott Uhl. (*Id.* at 32.) All have asserted they did not know Hopkins's age at the time of the

3

interview. (Atkins Decl. ¶ 8; Decl. of Bryan Peterson ¶ 4, May 7, 2021, Docket No. 58; Decl. of Kevin Baumgard ¶ 4, May 7, 2021, Docket No. 61; Decl. of Steven Tapp ¶ 4, May 7, 2021, Docket No. 62; Decl. of Scott Uhl ¶ 4, May 7, 2021, Docket No. 63.) Hopkins's resume submitted with his application did contain the year he graduated from high school. (Hoskins Decl., Ex. B at 77:20–25.) The selection panel interviewed the three finalists on March 12, 2015; on this date Hopkins was 40 years, 0 months, and 13 days old. (Hoskins Decl., Ex. A at 13, 235.)

The finalists were asked the same seventeen questions, which were provided to each candidate approximately thirty minutes prior to their interview. (*Id.* at 190–206; Atkins Decl. ¶ 12.) The interview questionnaire included questions such as:

1. Why are you the best candidate for this position? Describe your vision for the Dredge Goetz and why it is best for the organization.

2. What are the most critical factors for consideration once the dredge arrives at a new dredging site? Describe your experience with setup of a cutter-head pipeline dredge from arrival at the site to the start of dredging.

3. Describe your supervisory experience. What do you feel is your strongest trait as a leader/supervisor? What aspect of leadership is most challenging for you and how have you worked to overcome that challenge?

(Hoskins Decl., Ex. A at 190–206.)

After each interview the selection panel discussed the strengths and weaknesses of the candidate and ultimately ranked the candidates based on how well they believed their experience matched the requirements of the position. (Atkins Decl. ¶ 14; Baumgard Decl. ¶ 5.) Krause and Hopkins were the top two candidates, but ultimately the selection panel unanimously decided that Krause was more qualified. (Atkins Decl. ¶ 18; Baumgard Decl. ¶ 6; Tapp Decl. ¶ 12; Uhl Decl. ¶ 9; Peterson Decl. ¶ 15.)

Krause, the selectee, had over twenty years of experience with the St. Paul District; his most recent position being the Second Mate on the Dredge Goetz. (Hoskins Decl., Ex. A at 132–37.) He had been in this role for seven years. (*Id.*) Krause is two years younger than Hopkins. (*Id.* at 110.) Hopkins was Krause's direct supervisor and always gave very positive evaluations of Krause. (*Id.*, Exs. C–F.)

The selection panel stated that their main reasons for selecting Krause over Hopkins were that Krause demonstrated a greater knowledge of dredging operations and stronger leadership skills. (Atkins Decl. ¶¶ 15–17; Baumgard Decl. ¶¶ 7–8; Tapp Decl. ¶ 10; Uhl Decl. ¶ 8; Peterson Decl. ¶ 12.) Several of the selection panel members believed that Hopkins presented as very arrogant in his interview, that he acted as if the interview was a mere formality, and that he failed to effectively communicate a path toward building a team environment. (Baumgard Decl. ¶ 8; Uhl Decl. ¶ 8; Peterson Decl. ¶ 13.) The selection panel members stated that age was never mentioned in their deliberations nor was it a factor in considering who was most qualified for the position. (Atkins Decl. ¶

20; Baumgard Decl. ¶ 12; Tapp Decl. ¶ 11; Uhl Decl. ¶ 10; Peterson Decl. ¶ 17.) Several of the selection panel members stated that had Krause declined the offer, the position would have been readvertised, not offered to Hopkins. (Peterson Decl. ¶ 16; Hoskins Decl., Ex. A at 241–54.) However, selection panel member Scott Uhl stated that he does not recall that issue being discussed. (*Id.*)

On March 13, 2015, the day after the interviews, Hopkins was notified by Peterson that he was not selected; Hopkins was 40 years, 0 months, and 14 days old. (Hoskins Decl., Ex. A at 230, 235.) Peterson expressed that he hoped Hopkins would stay in his current role as First Mate as he brought a lot of skill to the fleet. (Hoskins Decl., Ex. B at 104:14–18, 166:21–167:9.)

## II.   PROCEDURAL BACKGROUND

In June of 2015, Hopkins filed a formal complaint against the USACE with the Equal Employment Opportunity Commission ("EEOC") for age discrimination. (Am. Compl. ¶ 8.) In 2017, the EEOC granted the USACE's motion for summary judgment finding no discrimination. (*Id.* at ¶ 9.) Hopkins then filed a this complaint against the Secretary of the Army alleging one count of age discrimination under the ADEA. (*See generally* Am. Compl.) Hopkins seeks back pay and front pay, fringe benefits to which he would have been entitled, and attorneys' fees and costs. (*Id.* at 7.) Defendant filed a Motion for Summary Judgment on Hopkins's claim. (Def's. Mot. for Summ. J., May 7, 2021, Docket No. 53.)

**DISCUSSION**

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).

When considering a summary judgment motion, pleadings submitted by pro se litigants are to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, pro se litigants are not excused from failing to comply with substantive or procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

**II.     ANALYSIS**

The ADEA makes it unlawful for an employer to discriminate against federal-sector employees on the basis of age, protecting individuals forty years and older. 29 U.S.C. § 633a. A federal-sector ADEA plaintiff need not show that age was the but-for cause of the ultimate employment action, but only that age was the but-for cause of discrimination. *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020). Plaintiffs who demonstrate that age was the but-for cause of the discrimination "cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision" unless they also show that age was the but-for cause of the employment outcome. *Id.* at 1177–78.

To avoid summary judgment on an age discrimination claim, the plaintiff must **either** produce direct evidence of age discrimination or prove their ADEA claim under the three-step burden-shifting analysis established in *McDonnell Douglas*. *McCullough v. Univ. of Ark. For Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). Direct evidence includes "conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude[.]" *Erickson v. Farmland Indus.*, 271 F.3d 718, 724 (8th Cir. 2001). Because Hopkins has produced no direct evidence that he was not selected for the Master PLD position based on age, the framework established in *McDonnell Douglas* applies.

The *McDonnell Douglas* three-step process requires the plaintiff to first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–

03 (1973).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action.  *Id.*  Once the defendant articulates such a reason, the burden is on the plaintiff to show the defendant's stated reason is merely a pretext for discrimination.  *Id.* at 804–05.

To establish a prima facie case of age discrimination based on a failure to hire, the plaintiff must show that: (1) they were over the age of forty; (2) they were otherwise qualified for the position; (3) they were not hired; and (4) the employer hired a younger person to fill the position.  *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011).

Hopkins has established a prima facie case of age discrimination.  Thus, the second step applies and the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for the challenged action.  *McDonnell Douglas*, 411 U.S. at 802–03.  This burden is "not onerous and the explanation need not be demonstrated by a preponderance of the evidence."  *Torgeson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011).  Defendant has met this burden.  Each member of the selection panel explained that Krause was selected on the basis of non-discriminatory criteria.  (Atkins Decl. ¶¶ 15–17; Baumgard Decl. ¶¶ 7–8; Tapp Decl. ¶ 10; Uhl Decl. ¶ 8; Peterson Decl. ¶ 12.)  This criterion included Krause's superior knowledge in dredging, his supervisory and leadership skills, his demeanor during the interviews, and his vision for the future of the Dredge Goetz.  (*Id.*)

Because Defendant has articulated legitimate nondiscriminatory reasons for USACE's failure to hire Hopkins, the Court moves to the third step and Hopkins must present evidence that Defendant's reasons are pretextual. Hopkins may do this by presenting evidence that "considered in its entirety (1) create[s] a fact issue as to whether [the defendant's] proffered reasons are pretextual; *and* (2) create[s] a reasonable inference that age was a determinative factor in the adverse employment decision." *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008) (emphasis in original).

Hopkins has made several allegations that Defendant's legitimate nondiscriminatory reason for hiring Krause over Hopkins is pretextual: (1) Hopkins is more qualified than Krause; (2) Krause was selected based on favoritism and nepotism; (3) the job announcement was revised to ensure Krause was eligible; (4) the interview process was impermissibly subjective; and (5) Hopkins would not have been offered the job even if Krause declined it.[2] The Court will address each of Hopkins's contentions. In sum, the Court finds that Hopkins has not provided sufficient evidence: (1) to demonstrate that Defendant's reason is pretextual; and (2) from which a reasonable inference could be drawn that age was the determinative factor in the adverse employment decision.

---

[2] Hopkins also attempts to discredit Krause's qualifications, asserting that Krause obtained them fraudulently. Hopkins's allegations are mere speculation, and though he provides the logbooks as support, the evidence is not sufficient to raise a genuine dispute of material fact as to fraud. Furthermore, this allegation is irrelevant because Krause's qualifications in 2012 are not pertinent to the question of whether he was properly qualified in 2015.

First, where an employer "contends that a selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 864 (8th Cir. 1997). A comparison that reveals both the plaintiff and the selectee are similarly qualified does not raise an inference of discrimination. *Id.* "Identifying those strengths that constitute the best qualified application is . . . a role best left to employers," courts should not sit as "super-personnel departments." *Duffy v. Wolle*, 123 F.3d 1026, 1038 (8th Cir. 1997).

Here, Hopkins has not presented sufficient evidence to establish that his qualifications were markedly superior to Krause's. Both candidates met the requisite mariner credentials and all screen out requirements. Krause had over twenty years of experience with the USACE and was serving as a Second Mate, directly under Hopkins, for seven years prior to being promoted. Hopkins himself described Krause as a "hard working leader who cares about the mission and his crew" and stated he was "a tremendous asset to the Dredge and the Corps[.]" (Hoskins Decl., Ex. C) The selection panel had two very qualified candidates both with strengths and weaknesses, which they properly weighed before deciding. The selection panel's preference for Krause's dredging knowledge and leadership skills over Hopkin's towing experience cannot be interpretated as pretext for discrimination.

Second, even if favoritism and nepotism played into the decision to hire Krause over Hopkins, this allegation does not establish pretext for **age** discrimination. It is not unlawful for an employer to make decisions based upon personal conflicts between employees or even unsound business practices, so long as the decision is not a result of discrimination based on the employee's membership in a protected class. *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001). Neither the affidavits nor the evidence submitted by Hopkins make **any** mention of age. What the evidence potentially proves is that Krause was selected based on favoritism or nepotism, but this issue is irrelevant to the Court's consideration of Hopkins's age discrimination claim. Hopkins has not presented any evidence sufficient to create a genuine dispute of material fact that Krause's selection was based on a prohibited factor, age.

Third, the fact that the certification requirement was changed from Inland Waterways to Western Rivers cannot be interpreted as pretext for discrimination even if it was changed because Krause was only certified for the Western Rivers. Revision of a job description is not indicative of pretext where the revised job qualifications accurately represent the responsibilities of the position. *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 988 (8th Cir. 2011); *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 871 (8th Cir. 2009). Hopkins has not offered evidence to establish that the revision of the job description does not accurately represent the responsibilities of the Master PLD position on the Dredge Goetz. Hopkins himself admitted that in his time working on the Dredge

Goetz the vessel never travelled on waterways other than Western Rivers. Hopkins argues that the Dredge Goetz was being considered for a dredging project in Florida, an Inland Waterway. Though Hopkins' argument is mere speculation, if the Dredge Goetz was being considered for a project on an Inland Waterway, this does not render the job description inaccurate. At the time the position was posted, the Dredge Goetz had only ever been used on the Western Rivers and was not going to be used on Inland Waterways in the foreseeable future. It was accurate to require only certification in Western Rivers when the Dredge Goetz had only been operating on these waterways. Thus, the change in the job description is not indicative of pretext for discrimination.

Fourth, consideration of subjective factors in the interview and hiring process is not per se evidence of pretext. While an employer cannot rely exclusively on subjective criteria, reliance on some subjective factors is permissible so long as they also rely on objective criteria and educational considerations in making the hiring decision. *Wingate*, 528 F.3d at 1080. Employers are entitled to compare applicant performances in interviews even when it involves consideration of subjective elements such as demeanor. *Tyler*, 628 F.3d at 988; *Duffy*, 123 F.3d at 1037. While the selection panel did consider subjective criteria such as leadership and interpersonal skills, much of the interview was objective. Each applicant was provided the questions prior to the interview and many of the questions focused on technical aspects of the job such as dredging, towing, safety, and maintenance. Further, the selection panel's consideration of Hopkins's demeanor

13

was not impermissible. Krause was unanimously selected by each member of the selection panel as the overall most qualified candidate based on both subjective and objective factors. Consideration of subjective elements does not necessitate a finding of pretext and because the selection panel properly considered both a combination of subjective and objective criteria, Hopkins cannot demonstrate Defendant's proffered reason is pretextual.

Lastly, it is unclear how a reasonable factfinder could infer age discrimination because the selection panel members have different recollections as to whether the job would have been offered to Hopkins had Krause not accepted. Regardless of the fact that this is pure speculation of a future event that never occurred, Hopkins has presented no evidence that a decision to readvertise was based on Hopkins's age rather than his suitability for the position. As stated by all the selection panel members, Hopkins did not possess the leadership and interpersonal skills required to excel in the position. Thus, a discrepancy in the memories of the selection panel on whether they would have readvertised the position cannot demonstrate pretext for discrimination.

Most critical, however, is that even if Hopkins was able to demonstrate the Defendant's proffered reason was pretextual, the record is devoid of any evidence from which a reasonable inference could be drawn that age was the determinative factor in hiring Krause. It is not enough to disbelieve the employer; a factfinder must believe the plaintiff's proffered reason that the action was intentional discrimination. *Reeves v.*

*Sanderson Plumbing Prods.*, 530 U.S. 133, 146 (2000).  An employer is entitled to judgment as a matter of law if "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred." *Id.* at 148. Arguably that evidence shows that the USACE engaged in favoritism or nepotism in selecting Krause over Hopkins.  What the abundant and uncontroverted evidence also shows is that Krause was not chosen over Hopkins because of his age.  The selection panel attested to the fact that age was never a consideration and Hopkins has provided no evidence that age was discussed by the selection panel or that they even knew his age during the interview process.  The evidence Hopkins relies upon, such as other USACE employee's declarations, demonstrates only that favoritism or nepotism were the reasons Krause was selected.  Hopkins' argument can be boiled down to this: since he was over forty and Krause was under forty the only reason that Krause was selected was due to age.  That argument simply does not follow, and no reasonable person could believe it does based on the evidence.  Hopkins has failed to raise a genuine question of material fact that age was a determinative factor in the adverse employment decision.

The Court understands that Hopkins believes he was treated unfairly and that he would have been the better choice for Master PLD of the Dredge Goetz.  Regardless of whether this is true, Hopkins has failed to present sufficient evidence to raise a genuine

15

question of material fact that he was discriminated against based on age, a required element for his claim. Thus, the Court will grant Defendant's Motion for Summary Judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment [Docket No. 53] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: November 30, 2021  _____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                                  Chief Judge
                                                       United States District Court